ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| EMILIO FAGOT RODRÍGUEZ<br>Recurrido<br><br>Ex Parte<br><br>PEDRO REMBERTO FAGOT BIGAS<br><br>(Causante)<br><br>CARMEN MARGARITA FAGOT BIGAS<br><br>Peticionaria | KLAN202400163 | ***Apelación acogida como Certiorari*** procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Núm.:<br>PO2023CV00216<br><br>Sobre:<br>Adveración de Testamento Ológrafo |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de abril de 2024.

Comparece Carmen Margarita Fagot Bigas (en adelante, peticionaria y/o interventora) mediante un recurso intitulado *Recurso de Apelación*,[1] para solicitarnos la revisión de la *Resolución Final* emitida y notificada el 23 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, TPI).[2] Mediante el aludido dictamen, el foro primario declaró Ha Lugar una petición sobre adveración y protocolización de testamento ológrafo.

Por los fundamentos que expondremos, se *expide* el auto de *Certiorari* y se *confirma* la *Resolución* recurrida.

I

El 27 de enero de 2023, el señor Emilio Fagot Rodríguez (en adelante, recurrido) presentó una *Petición de Adveración y*

---

[1] Acogemos el presente recurso como un *Certiorari,* ya que este es el mecanismo adecuado para la disposición de esta controversia conforme la Regla 52.2(b) de las Reglas de Procedimiento Civil. Ello, se debe a que este recurso recurre de una resolución final de un procedimiento de jurisdicción voluntaria.
[2] Apéndice del recurso, a las págs. 78-79.

Número Identificador

SEN2024_____

*Protocolización de Testamento Ológrafo* (en adelante, *Petición de Adveración*).[3] En esta, adujo ser primo hermano del señor Pedro Remberto Fagot Bigas (en adelante, causante), quien falleció el 6 de diciembre de 2022, siendo soltero y sin tener hijos. Asimismo, arguyó que, previo a su fallecimiento, el causante le había entregado una serie de documentos a este, entre los cuales se encontraba un sobre sellado que presuntamente era un testamento ológrafo. En atención a lo anterior, solicitó al foro primario ordenara la celebración de una vista sobre adveración de testamento y luego de los trámites de rigor, ordenara su protocolización. Según se desprende de los autos, el foro primario señaló una vista para el 12 de abril de 2023.[4]

En esa misma fecha, entiéndase, el 12 de abril de 2023, la peticionaria presentó una *Moción Urgente Solicitando Permiso para Intervenir y Solicitando Posposición de Señalamiento.*[5] Adujo ser la única hermana del causante, y tras entender que este había fallecido intestado, procedió, entre otros trámites, a presentar una petición de Declaratoria de Herederos en el alfanumérico PO2023CV00854.[6] Según expresó, al momento de la presentación de su escrito, dicha petición se encontraba pendiente de ser atendida por el TPI. La peticionaria arguyó haber advenido en conocimiento de la *Petición de Adveración* y de la vista programada para el 12 de abril de 2023, "por mera casualidad".[7] En su escrito, en síntesis, le solicitó al foro primario: (i) poder intervenir en el procedimiento que estaba por llevarse a cabo; (ii) la suspensión de la vista programada; y (iii) que se le concediera un término razonable para oponerse a la *Petición de Adveración*, para contratar peritos y comparecer debidamente

---

[3] *Id.,* a las págs. 13-17.
[4] *Id.,* a la pág. 19.
[5] *Id.,* a las págs. 18-20.
[6] *Id.,* a las págs. 9-12.
[7] *Id.,* a la pág. 19.

preparada para impugnar el testamento en cuestión.[8] Llamado el caso para vista el 12 de abril de 2023, la juez que presidía los procedimientos informó que se inhibiría *motu proprio* de atender el caso. Por tanto, los asuntos en ese momento quedaron *sub judice.*

Así las cosas, el 17 de abril de 2023, la peticionaria presentó una *Moción de Desestimación.*[9] En esencia, alegó que interpuso dicha moción sin alegadamente haberse sometido a la jurisdicción del TPI. Lo anterior, arguyendo que la omisión del recurrido en procurar que se le citara a los fines del trámite de la *Petición de Adveración* privaba de jurisdicción al foro primario y que, en consecuencia, la acción debía ser desestimada. Posteriormente, el 8 de junio de 2023, presentó una *Moción Suplementando la Moción de Desestimación,*[10] en la cual expresó que, al no existir un término para su notificación, le era de aplicación la Regla 72 de Procedimiento Civil; y, además, esbozó que, al no notificársele dentro de un término análogo al término improrrogable del diligenciamiento del emplazamiento, se trataba de un error insubsanable, por lo cual procedía la desestimación.

Por su parte, el 30 de junio de 2023, el recurrido presentó una *Réplica a "Moción de Desestimación" [Entrada 14] y "Moción Suplementando Moción de Desestimación" [Entrada 23] de la parte Interventora Carmen Margarita Fagot Bigas.*[11] En su escrito, se opuso a lo solicitado por la peticionaria, planteando que esta carecía de legitimación activa, por lo que le solicitó al foro primario el señalamiento de la vista de adveración y protocolización de testamento ológrafo. A su vez, el 24 de julio de 2023, la peticionaria presentó una *Moción en Oposición a Réplica y a Moción Urgente,*[12] en la cual sostuvo que esta ostentaba legitimación activa para

---

[8] *Id.*
[9] *Id.,* a las págs. 27-32.
[10] *Id.,* a las págs. 35-38.
[11] *Id.,* a las págs. 39-55.
[12] *Id.,* a las págs. 59-72.

comparecer en el presente caso, expresando, además, que nunca se sometió a la jurisdicción del TPI, y reiteró su posición en torno a la dilación en su notificación, la cual reafirmó era insubsanable.

De ahí, el 15 de noviembre de 2023, se celebró una vista ante una segunda juez.[13] A dicha vista compareció la representación legal de la parte peticionaria y del recurrido. La peticionaria no compareció. En dicha vista se discutió la *Moción de Desestimación*. En ella, se reconoció que "la interventora tiene derecho de participar [del proceso de adveración] y compareció".[14] El TPI señaló la correspondiente vista para el 22 de enero de 2024, a las 9:00 am, quedando notificada la peticionaria en corte abierta, por conducto de su representante legal.

Subsiguientemente, el 12 de diciembre de 2023, el foro primario emitió una *Resolución*, notificada al día siguiente.[15] En ella, el foro recurrido declaró No Ha Lugar la *Moción de Desestimación* y mantuvo el señalamiento de vista. Inconforme con este dictamen, la peticionaria interpuso un primer recurso de *Certiorari* acompañado de una solicitud en auxilio de jurisdicción, en el alfanumérico KLCE202301466, denegado mediante *Resolución* emitida por este Panel el 17 de enero de 2024.

Así las cosas, el 22 de enero de 2024, se celebró la vista de adveración y protocolización de testamento. A la misma compareció el recurrido y su representante legal, así como el notario seleccionado para la protocolización del testamento ológrafo.[16] Cabe resaltar que ni la peticionaria, ni su representación legal comparecieron a la vista. De igual modo, conforme surge de la *Minuta* de la vista,[17] se desconocía la razón por la cual la peticionaria no compareció.

---

[13] *Id.,* a las págs. 73-77.
[14] *Id.,* a la pág. 75.
[15] *Id.,* a las págs. 1-8.
[16] *Id.,* a la pág. 78.
[17] *Id.,* a las págs. 81-83.

Según se desprende de los autos, durante la vista, el foro primario recibió prueba testifical y documental. La prueba testifical consistió en los testimonios del Sr. Emilio Fagot Rodríguez, Sr. José Gabriel Fagot Díaz, Sra. Patricia Rivera Meléndez y la Sra. Ángela M. Núñez Batista. Culminados los interrogatorios, el TPI examinó a los testigos con preguntas aclaratorias.[18] Por su parte, en cuanto a la prueba documental recibida, la misma fue marcada como Exhibit A hasta el Exhibit K.[19] Además, el recurrido solicitó que se tomara conocimiento judicial del caso JJV2005-0110.[20] Finalmente, el foro primario emitió la *Resolución* recurrida. Mediante la misma, el TPI declaró Con Lugar la *Petición* y ordenó la protocolización del testamento, el cual se le entregó al notario, para custodiar el mismo y elevarlo a escritura pública.

En su dictamen, el tribunal *a quo* concluyó que, conforme a la prueba testifical recibida, cuatro (4) testigos identificaron la letra y firma del causante, y que quedó satisfecho con la prueba documental y testifical recibida.[21] A raíz de lo anterior, se procedió a dar lectura al testamento ológrafo, y luego se hizo constar que, leído el testamento durante la sesión, este fue iniciado por la secretaria de servicios a sala, el notario y la juez que presidió la vista.[22]

Insatisfecha con lo resuelto, el 22 de febrero de 2024, la peticionaria compareció mediante el presente recurso, en el cual esgrimió la comisión de los siguientes tres (3) errores:

> Primer Error: Erró el Tribunal de Primera Instancia al resolver que el requisito de citación establecido en el artículo 551(A)(2) del Código de Enjuiciamiento Civil no es de naturaleza jurisdiccional y, en co[n]secuencia, se llevó a cabo la celebración de la vista de adveración y protocolización del testamento aun cuando <u>nunca</u> se

---

[18] *Id.,* a la pág. 83.
[19] *Id.,* a la pág. 78.
[20] *Id.,* a la pág. 79.
[21] *Id.*
[22] *Id.*

notificó de la vista ni se citó conforme a la ley a la hermana del causante, la aquí apelante[.]

Segundo Error: Erró el Tribunal de Primera Instancia al resolver que no se ocasionó perjuicio alguno a la apelante ya que con su intervención se hab[í]a subsanado el incumplimiento de la parte apelada[.]

Tercer Error: Erró el Tribunal de Primera Instancia al resolver que el requisito de citación establecido en el artículo 551(A)(2) del Código de Enjuiciamiento Civil se aplicar[á] únicamente a los herederos citados en el testamento ológrafo, sin percatarse de la admisión judicial y de que hab[í]a otra hermana que premurió al testador un mes antes y tanto a ella, como sus herederos no se les notificó <u>nunca</u>[.]

Oportunamente, la parte apelada compareció con su *Alegato en Oposición al Recurso.* Con el beneficio de la comparecencia de ambas partes procederemos a disponer del recurso ante nuestra consideración.

II

**A. Recurso de *Certiorari***

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[23] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> [...]
> El recurso de *[C]ertiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de

---

[23] 32 LPRA Ap. V, R. 52.1.

> *[C]ertiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[24]
> […]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> […]
> (b) *Recurso de "[C]ertiorari"*
> Los recursos de *[C]ertiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *[C]ertiorari.*[25]
> […]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[26] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[27] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[28] Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[29] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[30] La Regla 40 del Reglamento

---

[24] *Id.*

[25] 32 LPRA Ap. V, R. 52.2 (b).

[26] *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).

[27] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).

[28] *Pueblo v. Díaz de León,* 176 DPR 913, 920 (2009).

[29] *Banco Popular de Puerto Rico v. Gómez Alayón,* 2023 TSPR 145; *Mun. de Caguas v. JRO Construction, Inc.,* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

[30] *HIETEL v. PRTC,* 182 DPR 451, 459 (2011), *citando a Santa Aponte v. Srio. del Senado,* 105 DPR 750, 770 (1977).

del Tribunal de Apelaciones,[31] esboza los siguientes criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari*:

    A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

    B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

    C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

    D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

    E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[32] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[33]

### B. Jurisdicción y Sumisión Voluntaria

La jurisdicción es el poder o autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[34] Los tribunales adquieren jurisdicción por virtud de ley, por lo que

[31] 4 LPRA Ap. XXII-B, R.40.
[32] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[33] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[34] *AAA v. Unión Independiente Auténtica de Empleados de la AAA,* 199 DPR 638, 651-52 (2018).

no pueden arrogársela, ni las partes pueden otorgársela.[35] Es norma reiterada en nuestro ordenamiento que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[36] Como parte del análisis jurisdiccional de una controversia, los tribunales vienen obligados a considerar si cuentan con el poder o la autoridad para sujetar a una persona a una determinación obligatoria, declarando sus respectivos derechos y obligaciones; esto es lo que se conoce jurídicamente como jurisdicción *in personam.*[37]

En Puerto Rico, un tribunal adquiere jurisdicción sobre la persona del demandado de dos maneras: (i) mediante el uso adecuado de las normas procesales de emplazamiento provistas en las Reglas de Procedimiento Civil o, (ii) a través de la sumisión voluntaria del demandado a la jurisdicción del tribunal, lo que puede ser de forma explícita o tácita.[38] La jurisdicción sobre la persona está inextricablemente atada al debido proceso de ley.[39] Como colorario, la falta de jurisdicción *in personam* es un impedimento infranqueable que veda todo trámite judicial y macula de nulidad el ya efectuado.[40] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[41] De lo contrario, cualquier dictamen en los méritos será nulo y, por ser ultra vires, no se puede ejecutar.[42]

---

[35] *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016).
[36] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Ríos Martínez, Com. Alt. PNP v. CLE*, supra.
[37] *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 702 (2012).
[38] *Cancel Rivera v. González Ruiz*, 200 DPR 319, 330 (2018); *Cirino González v. Adm. de Corrección*, 190 DPR 14, 29 (2014); *Márquez v. Barreto*, 143 DPR 137, 143 (1997).
[39] *Torres Zayas v. Montano Gómez*, 199 DPR 458, 467 (2017); *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 21 (1993).
[40] *Reyes v. Oriental Fed. Savs. Bank, Id.*, a la pág. 28.
[41] 4 LPRA Ap. XXII-B, R. 83; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).
[42] *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016); *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).

Conforme a nuestra jurisprudencia, "[l]a sumisión consiste en que una parte comparece voluntariamente y realiza algún acto sustancial que constituya parte en el pleito, sometiéndose así a la jurisdicción del Tribunal."[43] Al hacer esto, la parte renuncia al requisito de notificación formal cuando se somete voluntariamente a la jurisdicción del tribunal.[44] Nuestro más alto foro reiteradamente ha resuelto que la comparecencia voluntaria suple la omisión del emplazamiento, y es suficiente para que un tribunal asuma jurisdicción sobre su persona.[45]

### C. Parte Interventora

Mediante el mecanismo provisto en la Regla 21 de Procedimiento Civil, se faculta la comparecencia de un tercero en una acción judicial que ha sido previamente instada. La Regla 21.1 de las Reglas de Procedimiento Civil dispone que:

> Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito:
>
> (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir o
>
> (b) cuando la persona solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pueda, de hecho, quedar afectado con la disposición final del pleito.[46]

La presente figura procura crear un balance entre la economía procesal al atenderse diversos asuntos, con la necesidad de que los casos concluyan en un tiempo razonable.[47] En consonancia con ello, el tribunal podrá permitir a cualquier persona intervenir en el pleito: (i)cuando por ley se le confiera un derecho condicional a intervenir o; (ii)cuando la reclamación o defensa de la persona solicitante y el pleito principal tengan en común una cuestión de hecho o de

---

[43] *Qme Caribe, Inc v. Srio de Hacienda*, 153 DPR 700, 711 (2001).
[44] *Vázquez v. López*, 160 DPR 714, 721(2003).
[45] *Qme Caribe, Inc v. Srio de Hacienda*, supra.
[46] 32 LPRA Ap. V, 21.1.
[47] *IG Builders et al. v. BBVAPR,* 185 DPR 307, 321 (2012).

derecho.[48] Una parte interventora notificará su solicitud de intervención conforme la Regla 67 de las Reglas de Procedimiento Civil, exponiendo las razones bajo las cuales se basa su solicitud, acompañada de una alegación que establezca la reclamación o defensa que motive dicha intervención.[49] Por lo que, en su aspecto práctico, el proceso de intervención inicia mediante una solicitud al tribunal en donde la parte interesada expone los fundamentos que justifiquen su injerencia en el pleito, acompañada de una alegación correspondiente a la reclamación o defensa que pretende proseguir en el caso.[50]

**D. Proceso de Adveración de Testamento**

El proceso de adveración de un testamento ológrafo se lleva a cabo para comprobar la autenticidad e identidad del escrito como autografiado por la persona a quien se atribuye; sin dicho trámite, un testamento ológrafo no cobra eficacia.[51] Este procedimiento tiene un "doble carácter", el cual incluye verificar la autografía y firma, y segundo, autorizar su protocolización.[52] Para la apertura, adveración y protocolización de los testamentos, el Código Civil de 2020 dispone que se observará lo dispuesto en la legislación aplicable.[53] A tenor con lo anterior, el Código de Enjuiciamiento Civil, en su Artículo 551,[54] establece el procedimiento para la protocolización de testamentos ológrafos. El referido artículo que gobierna la protocolización de testamentos ológrafos dispone que una vez presentado el testamento ológrafo y acreditado el fallecimiento del testador, el Tribunal de Primera Instancia procede a su lectura en audiencia pública en el día y hora señalados al

---

[48] 32 LPRA Ap. V, 21.2.
[49] 32 LPRA Ap. V, 21.4.
[50] *IG Builders et al. v. BBVAPR,* supra, a la pág. 322.
[51] *In Re De la Texera Barnes*, 177 DPR 468, 480(2009), *citando a* E. González Tejera, Derecho de Sucesiones, San Juan, P.R., Editorial de la Universidad de Puerto Rico, 2002, T. II, pág. 154.
[52] *Ab Intestato Alfonso Lugo Rodríguez*, 151 DPR 572, 579 (2000).
[53] 31 LPRA §11294, Art. 1658.
[54] 32 LPRA § 2280a, Art. 551A.

efecto, abriéndolo si estuviere en pliego cerrado, rubricándolo el juez con el notario en todas las hojas y comprobando acto continuo su identidad por medio de tres (3) testigos que conozcan la letra y firma del testador y declaren que no abrigan duda racional del hallarse el testamento escrito y firmado de mano propia del mismo.[55] Posteriormente, el tribunal deberá determinar si estima justificada la identidad del testamento.[56]

La importancia de este procedimiento estriba en la autentificación, es decir, en el convencimiento del tribunal "de que la letra y firma del manuscrito pertenecen a la persona a quién se le atribuye autoría". [57] Un tribunal obtiene o no su convencimiento luego de pesar el testimonio de los testigos que declaran no abrigar dudas racionales de que fue el testador quien redactó y firmó el manuscrito. [58] No obstante, en caso de no quedar persuadido por dichos testimonios, el tribunal podrá solicitar prueba calígrafa, ordenando el cotejo pericial de las letras, así como exigir prueba de peritos calígrafos. [59] Una vez presentado el testamento, y acreditado el deceso, rubricado conjuntamente por el juez y el Notario en todos sus folios, y quedar convencido de que la letra y firma pertenece a quién se le atribuye, se ordenara su protocolización.[60]

Para la práctica de las diligencias expresadas anteriormente, dispone el Artículo 551(A)(2) lo siguiente:

> [S]erán citados con la brevedad posible, el cónyuge sobreviviente, si lo hubiere, los descendientes y los ascendientes legítimos del testador, y en defecto de unos y de otros, los hermanos… [l]os citados podrán presenciar la práctica de dichas diligencias y hacer en el acto, de palabra, las observaciones oportunas sobre la autenticidad del testamento. [61]

---

[55] 32 LPRA § 2280a, Art. 551A (1).
[56] 32 LPRA § 2280a, Art. 551A (3).
[57] *In Re De la Texera Barnes*, 177 DPR 468, 480(2009), *citando a* E. González Tejera, Derecho de Sucesiones, San Juan, P.R., Editorial de la Universidad de Puerto Rico, 2002, T. II, pág. 155.
[58] *Id.*
[59] *Id.*; *Ab Intestato Alfonso Lugo Rodríguez*, supra, a la pág. 580.
[60] *Ab Intestato Alfonso Lugo Rodríguez, Id.,* a las págs. 579-580.
[61] 32 LPRA § 2280a, Art. 551A (2).

Los previamente citados podrán presenciar la práctica de dichas diligencias y hacer en el acto de palabra, las observaciones oportunas sobre la autenticidad del testamento. Nuestro más alto foro ha expresado que "[e]l trámite implica-luego de la presentación del documento y la acreditación del fallecimiento del autor- que el Tribunal de Primera Instancia cite al cónyuge supérstite, de haberlo, descendientes y ascendientes y, en su defecto, los hermanos."[62]

Cabe resaltar que los interesados pueden hacer observaciones oportunas relacionadas con la firma y letra del testador, más ello no le impone al juzgador el deber de autorizar un interrogatorio, ni a dilucidar asuntos distintos o cuestiones que no se relacionen a la autografía.[63] Una vez determinado por el Tribunal de Primera Instancia que estima justificada la identidad del testamento, acordará y ordenará la protocolización del mismo, y cualquiera que sea la resolución de dicho foro, se llevará a efecto, no obstante oposición, quedando a salvo los derechos de los interesados para ejercitarlos en el juicio que corresponda.[64]

**III**

Tenemos ante nuestra consideración la revisión de una *Resolución* mediante la cual se declaró Ha lugar una petición de adveración, y se ordenó la protocolización del testamento ológrafo presentado por la parte recurrida. Vemos que, en el *primer* y *segundo* señalamiento de error, la parte peticionaria nos plantea, en síntesis, que la primera instancia judicial incidió al resolver que el requisito de citación establecido en el artículo 551(A)(2) del Código de Enjuiciamiento Civil no es de naturaleza jurisdiccional, aduciendo que erró al resolver que con su intervención se había subsanado la falta de notificación de la parte apelada para la celebración de la

---

[62] *Ab Intestato Alfonso Lugo Rodríguez, Id.,* a la pág. 579.
[63] *Id.,* a la pág. 580.
[64] 32 LPRA § 2280a, Art. 551A (3).

vista de adveración y protocolización de testamento ológrafo. Por último, en el *tercer* señalamiento de error, la parte peticionaria nos invita a concluir que el foro primario incidió al resolver que el requisito de citación establecido en el artículo 551A (2) del Código de Enjuiciamiento Civil aplicaría únicamente a los herederos citados en el testamento ológrafo, sin notificarle a ella, así como a la sucesión de la hermana quién premurió al causante. Tras juzgar que los errores esgrimidos pueden discutirse de manera conjunta, obraremos como tal.

El testamento es el negocio jurídico solemne, personalísimo y unilateral, mediante el cual una persona natural dispone para después de su muerte, total o parcialmente, el destino de sus bienes.[65] De acuerdo con nuestro ordenamiento jurídico, entre los varios tipos de testamentos permitidos, se encuentra el testamento ológrafo, el cual es el autógrafo, fechado y firmado por el propio testador. La persona que tenga en poder un testamento ológrafo, está obligada a presentarlo en el tribunal o ante un notario para su adveración dentro de los treinta (30) días desde que tiene noticia de la muerte del testador; y una vez concluido el procedimiento de adveración, dicho testamento deberá protocolizarse para que sea eficaz.[66] Por lo tanto, para que un testamento ológrafo cobre validez y sea ejecutorio, éste deberá estar adverado y protocolizado, puesto que si no, será un "mero documento privado sin eficacia jurídica tras la muerte de su otorgante".[67] De éste testamento ológrafo no ser presentado dentro del plazo de cinco (5) años desde el día de fallecimiento del testador, habrá caducado.[68]

Es de ver que el proceso de adveración de un testamento ológrafo se lleva a cabo para comprobar la autenticidad e identidad

---

[65] 31 LPRA §11251, Art. 1639.
[66] 31 LPRA §11284, Art. 1653.
[67] *In Re De la Texera Barnes*, 177 DPR 468, 480 (2009).
[68] 31 LPRA §11285, Art. 1654.

del escrito como autografiado por la persona a quien se atribuye; sin dicho trámite, un testamento ológrafo no cobra eficacia.[69] Este procedimiento tiene un "doble carácter", el cual incluye verificar la autografía y firma, y segundo, autorizar su protocolización.[70] Ahora bien, el trámite para llevar a cabo este proceso de adveración, el cual requiere la celebración de una vista se encuentra establecido en el Código de Enjuiciamiento Civil en su Artículo 551.[71]

En *primer* lugar, puntualizamos que, un análisis integral del expediente de autos nos lleva forzosamente a concluir que el *primer* y *segundo* error no fueron cometidos y carecen de todo mérito. Si bien es cierto que la peticionaria no fue notificada de la Petición, también es cierto que su comparecencia al solicitar la intervención en el pleito tuvo la inequívoca misión de reclamar un derecho o interés en el asunto objeto del litigio, tal y como reza la Regla 21.1 de las de Procedimiento Civil.[72]

Es claro que, en el escrito presentado por la peticionaria, solicitando la intervención, allá para el 12 de abril de 2023, en el cual adujo haberse enterado de la Petición "por mera casualidad", también realizó reclamos específicos tales como (i) un término para oponerse a la *Petición*; (ii) la suspensión de una vista previamente calendarizada; (iii) un término para contratar peritos; (iv) un término para comparecer debidamente preparada para impugnar el testamento en cuestión. Basado en lo anterior, no existe espacio para poder concluir que el foro primario haya actuado contrario a derecho o haya abusado de su discreción al determinar que no era necesario citar o notificar a la peticionaria tal.  Claramente, con su escrito inicial vemos que la peticionaria tenía la intención de

---

[69] *In Re De la Texera Barnes*, 177 DPR 468, 480(2009), *citando a* E. González Tejera, Derecho de Sucesiones, San Juan, P.R., Editorial de la Universidad de Puerto Rico, 2002, T. II, pág. 154.
[70] *Ab Intestato Alfonso Lugo Rodríguez*, supra.
[71] 32 LPRA § 2280a, Art. 551A.
[72] 32 LPRA Ap. V, 21.1.

someterse voluntariamente a la jurisdicción del TPI. Los escritos presentados posteriormente por la peticionaria en los cuales, en su comparecencia incluyó la frase "sin someterse a la jurisdicción" no tienen el efecto de anular lo actuado por la parte peticionaria. Es menester señalar que, conforme a nuestra jurisprudencia, "[l]a sumisión consiste en que una parte comparece voluntariamente y realiza algún acto sustancial que constituya parte en el pleito, sometiéndose así a la jurisdicción del Tribunal."[73] Al hacer esto, la parte renuncia al requisito de notificación formal cuando se somete voluntariamente a la jurisdicción del tribunal.[74] Nuestro más alto foro reiteradamente ha resuelto que la comparecencia voluntaria suple la omisión del emplazamiento, y es suficiente para que un tribunal asuma jurisdicción sobre su persona.[75] Nótese que todo lo anterior describe los actos de la peticionaria en el caso de autos.

Conviene destacar, además, que los autos en el presente caso revelan que, contrario a lo expresado en el recurso, la parte peticionaria fue citada a la vista de adveración, por conducto de su representación legal. Esta citación se dio en corte abierta, en la vista celebrada el 15 de noviembre de 2023,[76] y luego, mediante *Resolución* del 12 de diciembre de 2023,[77] el foro primario mantuvo el señalamiento de vista. Forzoso es concluir que, fue la parte peticionaria quien, sin justificación que surja del expediente judicial optó por ausentarse. Es por todo lo anterior, que concluimos que el *primer* y *segundo* error no fueron cometidos.

Tomando como punto de partida que el foro primario adquirió jurisdicción sobre la parte peticionaria y que fue citada a la vista de adveración, vemos que, en el *segundo* lugar, la parte peticionaria

---

[73] *Qme Caribe, Inc v. Srio de Hacienda*, 153 DPR 700, 711 (2001).
[74] *Vázquez v. López*, 160 DPR 714, 721(2003).
[75] *Qme Caribe, Inc v. Srio de Hacienda*, supra.
[76] Apéndice del recurso, a las págs. 73-77.
[77] *Id.,* a las págs. 1-8.

nos invita a concluir, en síntesis, que debido a que una de las hermanas del Causante había premuerto, era necesario citar a sus herederos, entiéndase, a los hijos de esta última. Sobre el particular, el Artículo 551(A)(2) del Código de Enjuiciamiento Civil dispone lo siguiente:

> [S]erán citados con la brevedad posible, el cónyuge sobreviviente, si lo hubiere, los descendientes y los ascendientes legítimos del testador, **y en defecto de unos y de otros, los hermanos**... [l]os citados podrán presenciar la práctica de dichas diligencias y hacer en el acto, de palabra, las observaciones oportunas sobre la autenticidad del testamento.[78] (Énfasis suplido).

Además, nuestro más alto foro ha expresado que "[e]l trámite implica-luego de la presentación del documento y la acreditación del fallecimiento del autor- que el Tribunal de Primera Instancia cite al cónyuge supérstite, de haberlo, descendientes y ascendientes y, en su defecto, los hermanos."[79] Conforme se desprende de los autos, la hermana del Causante así como de la peticionaria falleció y, presuntamente, esta última tenía hijos, sobrinos del Causante. Sin embargo, la disposición del Código de Enjuiciamiento Civil no extiende la obligación de notificar a los sobrinos, llamados herederos por la parte peticionaria. Es claro que, conforme a nuestro ordenamiento jurídico, las personas a ser citadas al proceso de adveración son el cónyuge sobreviviente, si lo hubiere, los descendientes y los ascendientes legítimos del testador, **y en defecto de unos y de otros, los hermanos**.[80] De acuerdo a lo anterior, no existe espacio para concluir que dicha lista fuese extensiva y obligara la citación de otros parientes al proceso de adveración. Dado a lo anterior, disponemos que el *tercer* error tampoco fue cometido.

---

[78] 32 LPRA § 2280a, Art. 551A (2).
[79] *Ab Intestato Alfonso Lugo Rodríguez*, supra.
[80] 32 LPRA § 2280a, Art. 551A (2).

**IV**

Por los fundamentos que anteceden, se *expide* el auto de *Certiorari* y se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones